

Martinez & Loiacono PLLC

Christina M. Martinez, Esq.
Partner
245 Bricktown Way, Suite J
Staten Island, New York 10309
T: (347) 215-4543
F: (718) 556-2007
ChristinaMartinezEsq@gmail.com
www.ExemptionLawyer.com
*Admitted in:*
*New York & New Jersey*

*VIA ECF*
Hon. Eric N. Vitaliano
United States District Judge

    **Re:**    *Fennessy v. New York City Fire Dep't, et al.*, No. 25-cv-01337 (ENV)(JRC)

Dear Judge Vitaliano:

Plaintiff Sean Fennessy respectfully opposes Defendants' request to file a motion to dismiss, as the proposed grounds are meritless.

## 1. FDNY Is Not a Suable Entity—But the City Is Properly Named

Plaintiff does not oppose dismissal of FDNY as a non-suable entity, so long as the City of New York concedes that it is legally responsible for the acts and omissions of FDNY for purposes of this action. If that representation is made, Plaintiff agrees that the City is the proper Defendant.

## 2. Plaintiff States a Valid First Amendment Claim

Defendants fundamentally mischaracterize the nature of Plaintiff's First Amendment claim. Plaintiff does not challenge the Vaccine Mandate itself as unconstitutional. Rather, Plaintiff challenges the policies and practices the City used to adjudicate religious accommodation requests, which discriminatorily disfavor Catholics and those whose beliefs do not conform to institutional doctrine. *See* Compl. ECF Doc. No 1 ¶ 5.

Specifically, Plaintiff alleges that the City, through policies promulgated by the Department of Citywide Administrative Services (DCAS), instructed agencies to evaluate religious accommodation requests by assessing whether the employee's beliefs aligned with formal religious leadership or doctrine. See Compl. ECF Doc. No 1 ¶ 101. Under this policy, individualized religious objections—such as Plaintiff's Catholic-based objection to vaccines derived from aborted fetal cell lines—were rejected if they did not match the public statements of Pope Francis or the Vatican. This is precisely the policy Plaintiff challenges. Compl., ECF Doc. No 1 ¶¶ 104, 106-111, 117, 120-125, 131, 133.

Ironically, the very Second Circuit cases Defendants cite—*New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. Nov. 13, 2024), and *Kane v. De Blasio*, 19 F.4th

1

152 (2d Cir. 2021)—support Plaintiff's claim. While both upheld the facial validity of the Vaccine Mandate, each also held that the City's policies and procedures for reviewing religious exemptions were unconstitutional as applied.

In *New Yorkers for Religious Liberty*, the court reversed dismissal of First Amendment claims by plaintiffs whose accommodation requests were denied for being too "personal" or "idiosyncratic." The Second Circuit held that it is unconstitutional to reject sincerely held religious beliefs simply because they do not align with established doctrine. 125 F.4th at 335. The court emphasized that such evaluations improperly intrude on religious authenticity and violate the Free Exercise Clause. *Id.*

In *Kane*, the court similarly found that while the Vaccine Mandate was facially neutral, the procedures used to evaluate accommodation requests were not, and that they "violated the First Amendment as applied to these Plaintiffs." 19 F.4th at 167. The Second Circuit made it explicitly clear that "[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views — even the leader of her faith —runs afoul of the Supreme Court's teaching that 'it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds'*." Kane, 19 F.4th at 168 (quoting *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)).

Plaintiff's allegations mirror those sustained in both cases. He explicitly pleads that his request was denied under policies that reject personal beliefs for deviating from institutional religious leaders' views. Compl. ¶¶ 104, 106–111, 117, 120–125, 131, 133. Indeed, the City has openly embraced this policy. In *Furno v. New York City Police Department*, Index No. 85021/2023 (Sup. Ct. N.Y. Cnty.), the City denied a Catholic officer's accommodation request because, although he cited fetal cell lines and opposition to abortion, his beliefs were "not based in the very religion to which he allegedly maintains a sincerely held religious belief." The City pointed to public statements by Pope Francis to claim that the officer's beliefs were invalid. *See* NYSCEF Doc. No. 31 at 15–16. This is not a hidden or speculative policy—it is a matter of public record.

Such a policy flatly contradicts decades of binding Supreme Court precedent, which prohibits the government from evaluating the centrality of a belief to a faith or comparing an individual's sincerity to a religious hierarchy. See *Thomas v. Review Bd.*, 450 U.S. 707, 715-716 (1981) ("It is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith."); *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990) ("Judging the centrality of different religious practices is akin to the unacceptable business of evaluating the relative merits of differing religious claims."). Here, the City's policy does exactly what the Supreme Court forbids: it makes the legitimacy of a belief contingent on whether the Pope agrees with it. The Free Exercise Clause protects individual conscience, not institutional conformity.

### 3. <u>Plaintiff Has Pleaded a Valid Cooperative Dialogue Claim</u>

The New York City Human Rights Law explicitly and unambiguously requires employers to engage in a cooperative dialogue before denying a request for reasonable accommodation. Plaintiff alleges that Defendants failed to do so. That is a textbook violation of the law.

In 2018, the City Council passed Local Law No. 59, amending the NYCHRL to mandate a robust, individualized, and timely cooperative dialogue process before an employer makes a final decision on any accommodation request. N.Y.C. Admin. Code § 8-107(28). The amendment was passed in direct response to prior case law holding that failure to engage in cooperative dialogue was not actionable. See *Hosking v. Memorial Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 63–64 (1st Dep't 2020); *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 838 (2014). The Council's legislative intent could not have been clearer. The Committee on Civil Rights stated that the law was necessary "to clarify the reasonable accommodation requirement by expressly requiring, as a part of the reasonable accommodation process, that covered entities engage in a cooperative dialogue." *See* Report of the Governmental Affairs Division, Comm. on Civil Rights, at p. 4731.

The definition of cooperative dialogue is codified in Admin. Code § 8-102. It requires an employer to discuss with the employee, at a minimum: (1) the individual's specific accommodation needs; (2) potential accommodations that may address those needs; (3) any alternative accommodations that may also meet those needs; and (4) any difficulty or hardship the accommodation may pose for the employer. The law further prohibits employers from issuing a final determination until this cooperative dialogue has concluded, and expressly states that a denial issued before such dialogue is a per se violation. Admin. Code § 8-107(28)(e).

Plaintiff alleges—clearly and specifically—that none of these requirements were met. Defendants never contacted him before issuing a boilerplate denial of his accommodation request. Compl. ¶¶ 64–66, 173. These allegations state a straightforward statutory violation, and dismissal at the pleading stage would directly contravene the plain text of the statute and the Council's deliberate effort to create an independent cause of action.

Finally, Defendants' reliance on *Marsteller* ignores the NYCHRL's mandate that it be "construed liberally" and that exemptions "be construed narrowly." Admin. Code §§ 8-130(a), (b). Whether a cooperative dialogue occurred is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss, particularly where Plaintiff pleads the process was entirely absent.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' request for leave to move to dismiss, as the proposed motion lacks merit and would needlessly expend judicial resources.

Respectfully Submitted,

Christina Martinez, Esq.

3